UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARRY SANDERS, Executor of the Estate of NANCY A. ANDERSEN and Assignee of JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>THE PHOENIX INSURANCE COMPANY and THE TRAVELERS INDEMNITY COMPANY OF AMERICA,<br><br>Defendants. | : | CIVIL NO. 14-CA-14039 (GAO) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is an insurance coverage action alleging that defendants The Phoenix Insurance Company ("Phoenix") and The Travelers Indemnity Company of America ("Travelers") (collectively, "Defendants") improperly failed to defend and indemnify their insured, identified in the case caption by the pseudonym "John Doe," and also improperly failed to effectuate prompt, fair, and equitable settlement, in connection with a claim that Doe was allegedly responsible for the apparent suicide of decedent Nancy A. Andersen ("Andersen"). Phoenix issued a homeowners' insurance policy to Doe, who is an attorney. Doe represented Andersen in divorce proceedings against her husband, plaintiff Harry A. Sanders ("Sanders"). In the course of that representation, Doe allegedly engaged in a sexual relationship with Andersen. Sanders claims that Doe's conduct in this relationship contributed to Andersen's declining mental health and ultimate suicide.

Insofar as it appears from the Complaint, no lawsuit was ever filed by Sanders against Doe which would trigger an insurer's obligation to defend that suit. A demand letter was sent by Sanders to Doe. Defendants declined to participate in settlement negotiations with Sanders. Doe ultimately reached a settlement with Doe and his professional liability insurer and commercial general liability insurer. In connection with that settlement, Doe assigned rights under the homeowners' policy to Sanders. Sanders, as executor of Andersen's estate, and as putative assignee of Doe's rights under the homeowner's insurance policy, asserts claims in this lawsuit against Defendants for their allegedly improper refusal to participate in settlement negotiations with Sanders.

The Complaint should be dismissed, in its entirety, for failure to state a claim. The homeowners' policy obligates Phoenix to defend and indemnity Doe where coverage exists. Here, based on the facts alleged: (1) Defendants had no duty to defend Doe, because there is no allegation that a lawsuit was ever filed against Doe triggering an obligation to defend a lawsuit, nor does the Complaint allege that Doe actually incurred defense costs; (2) Defendants had no duty to indemnify Doe, because there is no allegation that any judgment was entered against him; and (3) Defendants had no duty under Mass. Gen. L. chs. 93A ("Chapter 93A") and 176D ("Chapter 176D") to effectuate prompt, fair, and equitable settlement of Sanders' claims, because liability was not reasonably clear. This is because: (a) to the extent Sanders' claims arose out Doe's provision of legal services, they were subject to a policy exclusion; and (b) to the extent Sanders' claims arose out of alleged negligence in Doe's conduct in the course of the extramarital affair with Andersen, there was no legal basis on which Doe, in his individual non-legal capacity, could be liable for Andersen's suicide. At a minimum, Doe's liability for what

amounts to negligent dating was far from clear. He agreed to a settlement in order to prevent public disclosure and potential resulting damage to his professional reputation as an attorney, not because it was clear he was liable for the conduct alleged. The Complaint should, therefore, be dismissed in its entirety, and judgment entered for Defendants.

## II. **SUMMARY OF ALLEGATIONS**

The Complaint alleges as follows: Sanders is the widower of Andersen and the executor of her estate. (Compl., ¶ 2.) Andersen was found dead by apparent suicide on or about October 1, 2011. (*Id.*, ¶¶ 23-24.) Prior to her death, Andersen was represented by Doe in divorce proceedings she initiated against her husband, Sanders. (*Id.*, ¶¶ 8-9.) During the course of the legal representation, Doe and Andersen entered into a sexual relationship. (*Id.*, ¶ 15.)

After Andersen's death, Sanders asserted allegations against Doe in a Chapter 93A demand letter (the "Sanders Demand Letter to Doe") (attached hereto as Exhibit 1), claiming that Doe was responsible for Andersen's suicide. Specifically, Sanders alleged, *inter alia*, that Doe was "engaged in trade and commerce as such terms are defined in G.L. c. 93A and the transactions complained of herein constitute consumer transactions within the meaning of the above referenced statute. Ms. Anderson was your client and therefore a consumer within the meaning of the statute." (Ex. 1, at 1.) Sanders further alleged that Doe was aware that Andersen suffered from certain mental health conditions and that she had attempted suicide on several occasions (*id.* at 2); that he nevertheless entered into a sexual relationship with her that exacerbated her fragile mental state, engaged in a series of break-ups and reunions with her that further exacerbated her mental state, and ultimately terminated the relationship (*id.*); and that Doe's conduct was a significant factor in, and the precipitating cause of, Andersen's death. (*Id.*)

The letter further alleged that Doe's conduct violated Chapter 93A and applicable rules of professional conduct. (*Id.*) The Complaint does not allege that Sanders ever filed a lawsuit against Doe.

Doe is insured under a homeowners policy issued by Phoenix (the "Policy") (attached hereto as Exhibit 2).[1] (Ex. 2.) Doe put Defendants on notice of Sanders' claims after he was served the Sanders Demand Letter to Doe. (*Id.*, ¶¶ 29-30) By letter dated September 13, 2013, Defendants denied coverage on the grounds that Andersen's death did not qualify as an "occurrence" under the policy and that Sanders' claims were subject to the policy's exclusion for damages arising out of the provision of professional services. (*Id.*, ¶ 31.) One week later, by letter dated September 19, 2013, Sanders served on Defendants a written demand for relief pursuant to G.L. c. 93A, § 9, challenging Defendants' denial of coverage. (*Id.*, ¶¶ 32-33.) In addition, by letter dated October 8, 2013, Doe informed Defendants that Sanders had "raised" a new claim for negligent infliction of emotional distress, which he claimed was covered under the policy. (*Id.*, ¶ 37.) There is no allegation that this claim was ever asserted, however, in a lawsuit filed against Doe. In a phone call on October 9, 2014, Defendants reiterated their denial of Doe's claim for coverage, asserting that Doe owed no legal duty to Andersen from a failed romantic relationship. (*Id.*, ¶ 38.) Doe responded to Defendants' "lack of duty" defense by letter dated October 15, 2008, arguing that it was not an appropriate defense to coverage. (*Id.*, ¶ 39.) Nevertheless, Defendants continued to deny coverage and declined to participate in mediation. (*Id.*, ¶ 40.)

---

[1] Travelers did not issue the insurance policy or adjust the insurance claim, and is not a proper defendant in this case. That issue is not raised herein because it will be unnecessary for the Court to decide it if the Court grants this motion to dismiss.

On or about March 27, 2014, Sanders and Doe reached a settlement on Sanders' claims. (*Id.*, ¶ 41.) Pursuant to the settlement, Doe is purportedly obligated to pay Sanders $500,000, and Doe assigned to Sanders all of Doe's rights and interests under the Policy, insofar as it applied to Sanders' claims against Doe. (*Id.*) Subsequently, Sanders served on Defendants written demands for relief pursuant to G.L. c. 93A, § 9 for unfair settlement practices in violation of G.L. c. 176D. (*Id.*, ¶ 44.) Defendants continued to deny any liability to Sanders and/or Doe. (*Id.*, ¶ 46.)

In the Complaint, Sanders asserts seven causes of action against Defendants. He asserts four causes of action as the assignee of Doe under the Policy: breach of contract (Count II); breach of implied covenant of good faith and fair dealing (Count III); negligence (Count IV); and unfair and deceptive trade practices (Count V). He asserts two causes of action as the executor of Andersen's estate: breach of contract (Count VI) and unfair and deceptive trade practices (Count VII). He also asserts in both capacities a claim for declaratory relief regarding defendants' obligations under the Policy (Count I).

## III. APPLICABLE LEGAL STANDARDS

A motion to dismiss for failure to state a claim should be granted when the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)); *see also A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (explaining *Iqbal*).

In deciding this motion to dismiss, in addition to considering the allegations in the Complaint, the Court may consider the documents specifically referred to in the Complaint, including the Policy and the Sanders Demand Letter to Doe, copies of which are attached as exhibits hereto. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss."); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 25, n.1 (D. Mass. 2000) (holding that insurance policies attached to motion to dismiss did not convert the motion into one for summary judgment); *see also Golchin v. Liberty Mut. Ins. Co.*, 460 Mass. 222, 224 (2011) (holding that insurance policy attached to motion to dismiss did not convert the motion into one for summary judgment).

## IV. ARGUMENT

### A. AS A MATTER OF LAW, THERE WAS NO BREACH OF THE DUTY TO DEFEND, BECAUSE NO LAWSUIT WAS FILED AGAINST DOE

Sanders claims that Defendants were negligent and breached the Policy by "failing to defend . . . Doe despite the fact that liability was reasonably clear and the claims raised by Sanders were claims covered under the Policy." (Compl., ¶ 53.) Sanders' claims fail as a matter of law, because Sanders does not allege that he ever filed suit against Doe and, therefore, Defendants' duty to defend was not triggered.

The operative language of the duty to defend clause in the Policy provides:

> If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:
>
> . . .

> **b.** provide a defense at our expense of counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

(Ex. 2, at p. 40 (emphasis in original).) Thus, the Policy provides that the insurer will provide a defense, by counsel, where a suit is brought against the insured, and may choose to investigate and settle a claim if the insurer decides that is appropriate. (*Id.*)

It is axiomatic that the duty to defend is based on a comparison of allegations in a complaint against the insured with provisions in the insurance policy. *See Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co.*, 465 Mass. 741, 744 (2013). As a practical matter, there is nothing for an insurer to hire counsel to defend when no suit has been brought. As a Massachusetts Superior Court opinion recognized, as a general matter, "there being no suit, there is nothing to defend, nor can there be any judgment against which [the insurer] might have a duty to indemnify." *W. World Ins. Co. v. Meridian Builders*, No. 063696BLS1, 2007 WL 4707802, at *1 (Mass. Super. Dec. 3, 2007) (citing the Court's earlier ruling granting the defendant's motion to dismiss on the grounds that there was no duty defend where no suit had been filed).

Even where, as here, a Chapter 93A demand is served on the insured by a private party, two opinions of this Court have recognized that this is insufficient to trigger an insurer's duty to defend. In *Zecco, Inc. v. Travelers, Inc.*, 938 F. Supp. 65 (D. Mass. 1996) (O'Toole, Jr., J.), the insured received a letter from a former customer, accusing the insured of causing "a 1000 gallon sudden and accidental release of petroleum products." *Id.* at 66. The court held that the letter, stating that customer viewed the insured as a potentially responsible party, was not a "suit" that implicated liability insurer's duty to defend under the policy. *Id.* at 67. The court reasoned that

"the pressure of the demand letter is not comparable to a lawsuit," and a letter from a private party was not equivalent to a demand letter from a government agency. *Id.* at 68. Similarly here, Sanders, the widower of Doe's former client, served a Chapter 93A demand letter on Doe but never filed suit. The Sanders Demand Letter to Doe, like the *Zecco* letter, was not a "suit" triggering the duty to defend provided in the Policy, and the Policy does not require a defense of a "claim" where there is no "suit." *See also Liberty Mut. Ins. Co. v. Black & Decker Corp.*, No. (BERKS), 2005 WL 102964, at *16 (D. Mass. Jan. 13, 2005) (applying Maryland law, but relying on *Zecco* in finding that the duty to defend was not triggered by a private demand letter from a non-insured to an insured unless the insured itself was actually sued).

Massachusetts has recognized a limited exception where an insured's pre-suit demand is "substantially equivalent to the commencement of a lawsuit." *Hazen Paper Co. v. United States Fidelity and Guar. Co.*, 407 Mass. 689 (1990); *see also Zecco*, 938 F. Supp. at 67. *Hazen* addressed the very different context of a demand letter from a regulatory agency with extensive enforcement powers. The Supreme Judicial Court held that multiple enforcement letters sent to the insured by the United States Environmental Protection Agency ("EPA") and the Massachusetts Department of Environmental Quality Engineering ("DEQE"), advising the insured of its potential liability for the cleanup of a hazardous waste site and requesting the production of certain information from the insured was, although a close call, substantially the equivalent of a lawsuit, and therefore, the duty to defend had been triggered. 407 Mass. at 693-94. The court explained that "The consequences of the receipt of the EPA letter were so substantially equivalent to the commencement of a lawsuit that a duty to defend arose immediately. *The EPA letter was not the equivalent of a conventional demand letter based on a*

*personal injury claim.*" *Id.* (emphasis added). Here, in contrast, Sanders, a private party, served the type of "conventional demand letter" on a personal injury claim that the SJC recognized in *Hazen* would not trigger a duty to defend. Defendants' duty to defend was not triggered by Sanders' pre-suit demand, and Sanders' claim with respect to the duty to defend should be dismissed.

In any event, the purported duty to defend appears to be entirely academic at this juncture, because there is no allegation of a presently-existing suit or claim against Doe that Phoenix could defend. Rather, as the Complaint alleges, all claims by Sanders against Doe have been settled. (Compl., ¶ 41.) Any claimed duty to defend is therefore moot, except insofar as there is a claim for previously-incurred legal fees. And there is no allegation that Doe actually incurred legal fees in responding to Sanders' Chapter 93A demand letter that he paid for (as opposed to what his malpractice insurer might have paid for), and that Sanders has the right to and seeks to collect such previously-incurred fees. Without such allegations, Sanders fails to state a claim, even without resolving the question of whether the Chapter 93A demand letter triggered a duty to defend Doe.

## B. THERE WAS NO VIOLATION OF THE DUTY TO INDEMNIFY, BECAUSE THERE WAS NO JUDGMENT

Defendants' duty to indemnify Doe was never triggered because no judgment was entered against Doe. Sanders' claim for breach of the duty to indemnify therefore should be dismissed. The operative language of the Policy provides:

> If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

> **a.** Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**;

(Ex. 2, at p. 40 (emphasis in original).) The Policy further provides that "no action with respect to **Coverage E** can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us [i.e., Phoenix]." (*Id.* at p. 19.) Thus, the Policy provides that the insurer has a duty to indemnify the insured only when the insured becomes "legally liable" for damages, and no suit may be brought unless and until there is a final judgment or settlement agreement signed by Phoenix.

Under controlling First Circuit authority applying Massachusetts law, the duty to indemnify is "triggered only 'when a judgment within the policy coverage is rendered against [the] insured.'" *Great Am. Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 160 (1st Cir. 2007) (quoting *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7 (1989) ("*BSO* "); *see also Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico*, 986 F. Supp. 2d 104, 116 (D.P.R. 2013), as corrected (Dec. 20, 2013). Here, the Complaint does not allege that any judgment was entered against Doe. Thus, Defendants' duty to indemnify Doe has not been triggered, and Sanders' claim that Defendants' violated a duty indemnify Doe should be dismissed.

### C. DEFENDANTS DID NOT BREACH ANY DUTY TO SETTLE THE UNDERLYING CLAIMS

In the Complaint, Sanders alleges that Defendants breached their obligations under the Policy, were negligent, and committed an unfair and deceptive trade practice by failing to effectuate a prompt, fair, and equitable settlement of Sanders' claims once liability purportedly became reasonably clear. The Policy provides, in pertinent part, that the insurer "may investigate and settle any claim or suit *that [it] decides is appropriate*." (Ex. 2, at p. 40 (emphasis added).)

This language clearly rests discretion regarding whether to settle a claim or suit with the insurer. Consequently, Defendants were not negligent and did not breach the Policy when they exercised their discretion not to settle. *See Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co.*, 699 F.3d 544, 553 (1st Cir. 2012) ("As for the negligence claim, it is predicated on a breach of a duty to defend that does not exist in the contract."); *Ricardelli v. Merrimack Mut. Fire Ins. Co.*, No. 005217, 2001 WL 717129, at *4 (Mass. Super. Mar. 22, 2001) ("Since Merrimack had no duty to defend, any claims of negligence relating to the alleged mishandling or lack of defense on the uncovered claims must fail."). Moreover, as explained below, Defendants were not negligent and did not violate the Policy in failing to settle, because the Policy does not cover Sanders' claims.

Likewise, Defendants' refusal to settle the underlying claims did not constitute an unfair and deceptive trade practice. Pursuant to G.L. c. 176, § 3(9)(f), an insurance company commits an unfair claim settlement practice by "[f]ailing to effectuate prompt, fair and equitable settlements of claims *in which liability has become reasonably clear*." (Emphasis added). An insurer's violation of these provisions can provide the basis for a Chapter 93A claim. *Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556, 563 (2001). However, as explained below, based on the facts alleged, liability never became reasonably clear.

### 1. Sanders' Claims Against Doe Are Subject, At Least in Part, to the Exclusion for Damages Arising of an Insured's "Business"

In the Sanders Demand Letter to Doe, Sanders asserted, in the second paragraph, that Doe was engaged in trade or commerce, as those terms are defined in G.L. c. 93A, § 1, when he engaged in an inappropriate sexual relationship with his client, Anderson. (Ex. 2.) To the extent

that Sanders' claims against Doe are made in Doe's professional capacity, the claim for coverage is subject to the Policy's exclusion for damage arising out of or in connection with a business.

The applicable exclusion provides:

> 1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury or property damage:**
>
> ...
>
> **b.** Arising out of or in connection with a **business** engaged in by any **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business**.
>
> ...
>
> **d.** arising out of the rendering or failing to render of professional services;

(Ex. 1, at p. 41 (emphasis in original).) The Policy further defines "business" to include a "trade, profession, or occupation." (*Id.*, at 27.)

Doe's practice of law and his representation of Anderson in the divorce proceedings against Sanders clearly qualifies as a "trade, profession, or occupation" and the rendering of "professional services." *See generally Nationwide Mut. Ins. Co. v. Daniel*, No. 994205, 2000 WL 33943425, at *3 (Mass. Super. Dec. 5, 2000). The Policy excludes any damage arising out of this business and the rendering of these services. Sanders, in his demand letter to Doe, asserted claims against Doe in his professional capacity as Andersen's attorney. Accordingly, Defendants reasonably concluded that there was no coverage for these claims because of the exclusion. *See Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 821 (2003) ("it is clear that the business pursuits exclusion applies because the alleged battery inflicted by Trimble is associated with, related to, and linked to Trimble's performing work for her

employer"); *see also W. World Ins. Co. v. Am. & Foreign Ins. Co.*, 180 F. Supp. 2d 224, 233 (D. Me. 2002) (applying "professional services" exclusion). Thus, Sanders' claims in the Complaint that Defendants improperly failed to effectuate a prompt, fair, and equitable settlement after liability became reasonably clear should be dismissed.

### 2. Sanders Did Not Assert a Claim Against Doe in Doe's Individual Capacity For Which Liability Was Reasonably Clear

To the extent that Sanders' claims against Doe arose out of his personal conduct in connection with his personal relationship with Andersen rather than his professional conduct, Defendants nevertheless had no duty to settle, because Sanders failed to state a viable claim. Absent a duty created by virtue of the attorney-client relationship, Sanders essentially asserted a claim against Doe for negligent dating, for which there is no cause of action under Massachusetts law, because no legal duty exists. *See Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004); *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 709 (2000).

In *Conley*, the plaintiff brought suit against her former boyfriend for intentional and negligent infliction of emotional distress, fraud, and assault and battery, alleging that she had been misled into having a romantic relationship with the boyfriend because he knew she had little time in which to become a biological mother, and she would not have become intimate with him had she known of his vasectomy. *Conley*, 60 Mass. App. Ct. 799. The Massachusetts Appeals Court affirmed dismissal of the plaintiff's claims because the plaintiff could not "identify any legally cognizable duty between parties in a dating relationship, nor are we aware of any legally defined duty applicable in these circumstances." *Id.* at 801. Likewise, in *Quinn*, the plaintiff brought an action against his former wife's boyfriend, alleging intentional infliction of emotional distress. *Quinn*, 49 Mass. App. Ct. 696. The Appeals Court affirmed dismissal of

the claims, finding that the plaintiff's claims were indistinguishable from the statutorily-abolished claims of alienation of affection and criminal conversation. The court explained that "[b]y abolishing these common law torts, the Legislature has registered its intent to preclude recovery for emotional distress resulting from adultery." *Id.* at 705. Similarly here, to the extent that Sanders' claims against Doe arose out of his personal conduct in connection with his personal relationship with Andersen rather than his professional conduct, Sanders sought to impose a duty on Doe not recognized in the law. To the extent that Sanders' claim is for emotional distress resulting from adultery, it is barred by *Quinn*.

To establish that Defendants violated their duty to effectuate a prompt, fair, and equitable settlement, Sanders must prove that Doe's liability was "reasonably clear." "In determining whether an insurer's liability was 'reasonably clear,' 'an objective standard of inquiry into the facts and the applicable law' must be employed. The test is 'whether a reasonable person, with knowledge of the relevant facts and law, would ***probably*** have concluded, for good reason, that the insurer was liable to the plaintiff.'" *M. DeMatteo Const. Co. v. Century Indem. Co.*, 182 F. Supp. 2d 146, 163 (D. Mass. 2001) (citing *Demeo v. State Farm Mut. Auto. Ins. Co.,* 38 Mass. App. Ct. 955, 956 (1995)) (emphasis added; internal citations omitted)). Here, a reasonable person could not conclude that liability was reasonably clear because, in order to succeed against Doe, Sanders would have to successfully seek a change in Massachusetts law and the recognition of a new cause of action that the Appeals Court refused to recognize in *Conley. Pac. Indem. Co. v. Lampro*, 86 Mass. App. Ct. 60, 68 (2014) (affirming decision granting motion for judgment on the pleadings because duty to indemnify was not clear). Sanders has not pled facts on which a court could find that Defendants' liability was "reasonably clear," and his claim therefore should

be dismissed.[2]

### D. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

The Complaint alleges that Defendants are liable for failing to defend Doe, failing to indemnify Doe, and failing to effectuate a prompt, fair, and equitable settlement. All seven Counts of the Complaint are based on these allegations. As explained above, Sanders' claims for breach of contract (Counts II and VI), negligence (Count IV), and unfair and deceptive trade practices (Counts V and VII) should be dismissed, because there is no allegation that a lawsuit was ever filed against Doe triggering coverage, there is no allegation that any judgment was entered against him, and liability was not reasonably clear. For the same reasons, Sanders' claim for breach of implied covenant of good faith and fair dealing (Count III) should also be dismissed. *See Saint Consulting Grp., Inc.*, 699 F.3d at 553 (dismissing breach of implied covenant of good faith and fair dealing claim after finding that there was no duty to defend under the policy).

Moreover, Sanders' claim for declaratory relief (Count I) should also be dismissed, because under the applicable federal law, a declaratory judgment claim that fails to state a claim must be dismissed. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 36 (1st Cir. 2001) (affirming dismissal of declaratory judgment action for failure to state a claim); *Rishell v. Med. Card Sys., Inc.*, 925 F. Supp. 2d 211, 221 (D.P.R. 2013) ("In this case, declaratory judgment is inappropriate because the plaintiffs fail to state a claim upon which relief can be granted.")

---

[2] The Policy also excludes bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse." (Ex. 2, Policy Form HO-3 06/91, p. 16.) This exclusion is not asserted herein because it requires a factual record beyond the allegations in the Complaint to establish its applicability, but Defendants reserve the right to raise it should this lawsuit survive this motion.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss, dismiss the Complaint filed in this action in its entirety, and enter a final judgment in favor of Defendants.

Respectfully submitted,

THE PHOENIX INSURANCE COMPANY and THE TRAVELERS INDEMNITY COMPANY OF AMERICA,

By ______________________________

Danielle Andrews Long (BBO No. 646981)
E-mail: dlong@rc.com
Wystan M. Ackerman (BBO No. 651086)
E-mail: wackerman@rc.com
Jonathan E. Small (BBO No. 672480)
E-mail: jsmall@rc.com
ROBINSON & COLE LLP
One Boston Place, 25th floor
Boston, MA 02108
Tel: (617) 557-5900

Dated: November 24, 2014

## CERTIFICATE OF SERVICE

I hereby certify that, on November 24, 2014, this document will be served by U.S. mail, postage prepaid, to counsel for plaintiff at the following address:

Robert D. Cohan
Jonathan D. Plaut
COHAN RASNICK MYERSON PLAUT LLP
One State Street, Suite 1200
Boston, MA 02109

Danielle Andrews Long