UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14039-GAO

HARRY SANDERS, Executor of the Estate of
NANCY A. ANDERSEN and Assignee of
JOHN DOE,
Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY and
THE TRAVELERS INDEMNITY COMPANY OF AMERICA,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
November 20, 2015

O'TOOLE, D.J.

I have considered the parties' pleadings and motion papers, the Report and Recommendation ("R&R") filed by the magistrate judge (dkt. no. 38), the objections to the R&R respectively filed by the parties, and the arguments of counsel at the hearing on the objections. I conclude that the magistrate judge correctly resolved the legal issues arising from the defendants' Motion to Dismiss, and accordingly I ADOPT her Report and Recommendation, with the sole exception that I agree with the defendants' objection to the magistrate judge's statement in footnote 12 that the policy's professional services exclusion is inapplicable. It appears that the plaintiff tried to ride two horses—making claims against Doe both in his professional capacity and his personal capacity, thus potentially invoking both his professional liability and homeowners policies. To make those claims, the plaintiff differently characterized whether Doe had acted in his professional or non-professional capacities or both. The claims potentially insured by these defendants under the homeowners policy would have been claims about his actions or omissions taken in a non-

professional capacity. To the extent in this action that the plaintiff sought coverage of claims based on Doe's professional misconduct under the homeowners policy, the professional services exclusion would be effective to preclude those claims.

With that sole exception, I agree with the magistrate judge's reasoning and conclusions. The defendants' Motion to Dismiss (dkt. no. 11) is GRANTED, and the action is DISMISSED.

In accordance with this Court's prior grant of Doe's request to be identified by a pseudonym, Doe shall confer with the parties and submit redacted versions of the relevant filings within twenty-one days from the entry of this order. This case will be unsealed at that time.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARRY SANDERS, Executor of the Estate of NANCY A. ANDERSEN and Assignee of John Doe, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE PHOENIX INSURANCE COMPANY and THE TRAVELERS INDEMNITY COMPANY OF AMERICA, )<br><br>Defendants. ) | Civil Action No. 14-14039-GAO |

__REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS__
[Docket No. 11]

September 1, 2015

Boal, M.J.

In this action, plaintiff Harry Sanders, executor of the Estate of Nancy A. Andersen ("Sanders"), alleges that defendants The Phoenix Insurance Company ("Phoenix") and The Travelers Indemnity Company of America ("Travelers") (collectively, the "Defendants"), failed to defend and indemnify its insured, identified in the complaint by the pseudonym "John Doe," against a claim for wrongful death brought by Sanders. Sanders also alleges that the Defendants failed to effectuate a prompt, fair and equitable settlement of Sanders' claims against Doe. Sanders brings claims against the Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and unfair and deceptive practices under M.G.L. c. 176D and c. 93A. The Defendants have moved to dismiss the Complaint. Docket No.

11.[1]  For the following reasons, the Court recommends that the District Judge assigned to this case grant the motion.

I.      PROCEDURAL BACKGROUND

Sanders originally filed this case in Massachusetts Superior Court.  See Docket No. 14. On November 3, 2014, the Defendants removed the action to this Court.  Docket No. 2.

Defendants moved to dismiss the Complaint on November 24, 2014.  Docket No. 11.  On February 6, 2015, Sanders filed an opposition to the motion to dismiss.  Docket No. 21.  The Defendants filed a reply on March 12, 2015.  Docket No. 24.  Sanders filed a sur-reply on April 29, 2015.  Docket No. 32.  The Court heard oral argument on August 31, 2015.

II.     FACTS[2]

A.      Andersen's Death

Sanders is the widower of Nancy A. Andersen ("Andersen") and the executor of her estate.  Complaint ¶ 2.[3]  Sanders and Andersen were married in Winnetka, Illinois on or about August 27, 1994.  Id. at ¶ 6.  They had one child, Kenneth Sanders ("Kenneth"), who lives in Newton, Massachusetts with Sanders.  Id.

At all relevant times, John Doe was an attorney licensed to practice in Massachusetts and also a licensed social worker.  Complaint ¶ 7.  In January 2011, Andersen met Doe, and

---

[1] The District Court referred this case to the undersigned for full pretrial proceedings, including dispositive motions, on April 28, 2015.  Docket No. 30.

[2] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in Sanders' favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[3] The Complaint may be found at Docket No. 2-1, p. 5-17.

discussed possible divorce proceedings and her desire for reconciliation with Sanders. Id. at ¶ 8. In or about May 2011, Doe commenced divorce proceedings on behalf of Andersen. Id. at ¶ 9.

Early on in the course of representing Andersen, Doe learned that Andersen suffered from severe depression and anxiety, had suicidal tendencies and was in need of medical and psychological care and treatment for those conditions. Complaint ¶ 10. In addition, Doe learned that Anderson had been prescribed a number of anti-depressant and anti-anxiety medications. Id. Doe also learned that Andersen had recently attempted suicide by taking an overdose of Alprazolam, Seroquel, and Butalbital and had been hospitalized at Newton Wellesley Hospital. Id. at ¶ 11. Further, Doe learned that as a consequence of Andersen's suicidal ideations, she had been placed in an intensive care inpatient unit at Brookhaven Hospital in Seymour, Tennessee. Id. at ¶ 12.

Sanders alleges that Doe knew or should have known that Andersen's marital difficulties were exacerbating her precarious psychological condition and causing her to become increasingly depressed and suicidal. Complaint ¶ 13. Doe also knew or should have known that without proper medical and psychological care and treatment, Andersen's condition would not improve and could continue to deteriorate. Id. at ¶ 14. Sanders claims that, "with full knowledge of Andersen's severe disabilities and vulnerabilities, Doe seduced her and began a sexual relationship with her." Id. at ¶ 15.

According to Sanders, sexual liaisons between Doe and Andersen took place at hotels and at Doe's home, which are premises insured by the Defendants. Complaint ¶ 16. Through this sexual relationship, Doe caused Andersen to become alienated from Sanders and Kenneth, "which had the predictable effect of distancing her from the love and support which Sanders and Kenneth provided." Id. at ¶ 17. For example, Doe would kiss Andersen on the mouth in front

3

of Kenneth, which greatly disturbed Kenneth and contributed to his alienation from his mother. Id. at ¶ 18.

Several months after the sexual relationship began, Doe exacerbated Andersen's already fragile psychological state through a series of break-ups and reunions. Complaint ¶ 19. Doe would, in succession, break up with Andersen and then draw her back emotionally into an intimate sexual relationship, then cool and withdraw his affections again. Id. at ¶ 19. Sanders alleges that Doe's pattern of alternating affection and rejection exacerbated Andersen's depression, suffering, and suicidal ideations. Id. at ¶ 20.

Andersen's contemporaneous diaries and journals describe how she was initially drawn in by Doe's affection for her, and then how she suffered great heartache and loneliness when he repeatedly pulled back. Complaint ¶ 22. On August 14, 2011, she wrote "[John Doe] – . . . I love you, don't you realize that?  And isn't it pretty obvious my heart can't take one more break – isn't it obvious?"  Id.

On or about October 1, 2011, after Doe promised to come to her apartment but then chose not to do so, Andersen drank herself to death. Complaint ¶ 23. When Doe was unsuccessful in reaching her by phone, at about 6:00 p.m. he went to her apartment and entered through an unlocked window, where he discovered her body. Id. The cause of death as noted in the Certificate of Death was ethanol abuse. Id. at ¶ 24. Andersen's suicide note is addressed to Doe and states, "[w]here were you [John Doe], you said you'd come, even if it was 3 am – it's so hard for me not to conclude – I just didn't matter enough to anyone – how pathetic." Id. Sanders maintains that Doe's conduct was a significant factor in, and the precipitating cause of, Andersen's death. Id. at ¶ 26.

Andersen was forty-eight years old at the time of her death, earning about $180,000 with benefits and she contributed substantially to the upkeep of the household. Complaint ¶ 25. Sanders alleges that both he and Kenneth have suffered severe emotional distress and pecuniary harm as a result of Doe's actions. Id. at ¶ 27.

B.       Efforts To Obtain Coverage Under The Policy

On or about October 15, 2012, Sanders served upon Doe a written demand for relief pursuant to G.L. c. 93A, § 9 ("October 2012 Demand Letter"). Complaint ¶ 29. Doe was insured under a Homeowners' Policy (the "Policy") with Defendants. Id. at ¶ 28.[4]

The Policy provides, in relevant part:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, even if the claim or suit is false, we will:
>
> a. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgment interest awarded against the insured; and
>
> b. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Policy, Section II, Coverage E – Personal Liability (Docket No. 12-2 at 40).[5] The Policy also includes an exclusion for bodily injury or property damage "arising out of the

---

[4] Sanders alleges that Phoenix operates as a subsidiary of Travelers. Complaint ¶ 5. The Defendants state that Travelers did not issue the Policy or adjust the insurance claim, and is therefore not a proper defendant in this case. Docket No. 12 at 4, n. 1. However, the Defendants decided not to argue that issue in their motion because, if the Court grants their motion, it will be unnecessary to resolve the issue. Id.

[5] Sanders did not attach the Policy to the Complaint. Both Sanders and the Defendants included a copy of the Policy with their motion to dismiss papers. See Docket No. 12-2; Docket No. 21-1; Docket No. 21-2 at 1-17. In addition, the Plaintiff attached to his opposition copies of two

rendering or failing to render professional services." Policy, Section II – Exclusions (Docket No. 12-2 at 41).

"Bodily injury" is defined in the Policy as "bodily harm, sickness or disease, including required care, loss of services and death that results." Policy, Definitions, ¶ 3 (Docket No. 12-2 at 27). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in: (a) bodily injury; or (b) property damage." Policy, Definitions, ¶ 6 (Docket No. 12-2 at 27).

Doe promptly put the Defendants on notice of Sanders' claim. Complaint ¶ 30. By letter dated September 11, 2013 ("September 11, 2013 Denial Letter"), Defendants denied coverage, asserting that the Policy did not apply because (1) Andersen's death was not accidental in nature and thus not an "occurrence," under the Policy and (2) the damages arose out of the provision of professional legal services by Doe because he represented Andersen in divorce proceedings. Id. at ¶ 31.

---

demand letters sent to Doe and the Defendants. See Docket Nos. 21-2 at 18-30, 21-3. One of the letters was also included by Defendants. Docket No. 12-1. Finally, Sanders attached a copy of an opinion prepared by Renee Sorrentino, MD. Docket No. 21-4. Ordinarily, a court may not consider any documents outside of the complaint or not expressly incorporated in the complaint on a motion to dismiss, without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). However, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." Id. (internal quotations, modifications and citations omitted). Because the Policy is central to Sanders' claims, the Court will consider it without converting the instant motion into a motion for summary judgment. The Court will also consider the two demand letters that Sanders and the Defendants have attached to their papers as documents sufficiently referred to in the Complaint. See Complaint at ¶¶ 29, 31-34. The Court will not consider the opinion prepared by Dr. Sorrentino, as that document does not fall under any of the exceptions.

On or about September 19, 2013, Sanders served upon Defendants a written demand for relief pursuant to G.L. c. 93A, § 9 ("September 2013 Demand Letter") for unfair claim settlement practices in violation of G.L. c. 176D. Complaint ¶ 32. Sanders alleges that the September 2013 Demand Letter demonstrated that liability, damages, and causation were all reasonably clear. Id. at ¶¶ 33-34. The Defendants failed and refused to make any offer of settlement. Id. at ¶ 35.

Sanders and Doe both informed the Defendants that all parties to the dispute (including Sanders, Doe, Doe's former law firm and several other insurers) had agreed to mediate the dispute before a professional mediator and urged the Defendants to participate, but the Defendants failed and refused to do so. Complaint ¶ 36. In a further attempt to obtain coverage, by letter dated October 8, 2013, Doe informed the Defendants that Sanders had raised a claim for negligent infliction of emotional distress which was a covered claim under the Policy. Id. at ¶ 37. On or about October 9, 2013, the Defendants contacted Doe's counsel by telephone and took a new position; namely, that there was no coverage because Doe owed no duty to Andersen from a failed romantic relationship. Id. at ¶ 38. In response, and in a final effort to obtain coverage, by letter dated October 15, 2013, Doe advised the defendants that "lack of duty," although a defense which could be raised against a negligence claim, is not an exclusion or other ground for denying coverage. Id. at ¶ 39. Defendants continued to deny coverage under the Policy, failed to participate in mediation, and failed and refused to tender a reasonable offer of settlement. Id. at ¶ 40.

On or about March 27, 2014, Doe settled Sanders' claims against him for $500,000 and assigned to Sanders all of his rights and interests under the Policy as they applied to any claim, action or proceeding arising out of the death of Andersen. Complaint ¶ 41. Doe also assigned to

Sanders all claims against the Defendants arising out of the Defendants' breaches of their contractual obligation to indemnify, defend and protect Doe under the Policy. Id.

Pursuant to the settlement, Doe owes Sanders $500,000. Complaint ¶ 42. Doe demanded that the Defendants pay the $500,000 which he owes to Sanders pursuant to the settlement as well as the attorney's fees and costs incurred by Doe but the Defendants have failed to do so. Id. at ¶ 43.

On or about August 29, 2014, Sanders served upon Travelers, and or about September 1, 2014, Sanders served upon Phoenix, a written demand letter for relief pursuant to G.L. c. 93A, § 9A ("September 2014 Demand Letter") for unfair claim settlement practices in violation of G.L. c. 176D. Complaint ¶ 44. Sanders maintains that the September 2014 Demand Letter demonstrated that liability, damages, and causation were all reasonably clear, triggering the Defendants' obligation to effect a prompt, fair, and equitable settlement pursuant to G.L. c. 176D. Id. at ¶ 45. The Defendants failed and refused to make any offer of settlement. Id. at ¶ 46.

III.   ANALYSIS

Defendants moved to dismiss all claims against them. Docket No. 11.[6] All of Sanders' claims are based on the premise that the Defendants wrongfully failed to defend or indemnify Doe under the Policy. See Complaint at ¶¶ 49, 53, 56-57, 61, 64, 72-73, 76. Defendants argue that, as a matter of law, they had no duty to indemnify or defend Doe under the Policy and that, therefore, Sanders' claims must fail. Docket No. 11. The Court agrees with Defendants.

---

[6] In his opposition, Sanders incorrectly states that the Defendants' motion to dismiss does not challenge all of Sanders' claim. Docket No. 21 at 10, n. 3.

A.    Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28-29 (1st Cir. 2011) (citation omitted). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

B.    Defendants Did Not Have A Duty To Defend Doe Under The Policy

"The boundaries of an insurer's duty to defend are defined by the terms of the insurance policy." Vermont Mutual Ins. Co. v. Maguire, No. 08-10965-RWZ, 2010 WL 1416124, at *4 (D. Mass. Apr. 6, 2010) (citing Hazen Paper Co. v. U.S. Fid. & Guar. Co., 407 Mass. 689

9

(1990)). Under Massachusetts law, the interpretation of a disputed insurance policy is a matter of law for the court.[7] Nascimento v. Preferred Mut. Ins. Co., 513 F.3d 273, 276 (1st Cir. 2008) (citation omitted). "In construing an insurance contract, the court follows the usual rules of contract interpretation." Whittaker Corp. v. Am. Nuclear Insurers, 671 F. Supp. 2d 242, 247 (D. Mass. 2009) (citation omitted).

The court construes the words of an insurance policy in their usual and ordinary sense. Id. (citation omitted). The court must "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Hazen Paper Co., 407 Mass. at 700. Absent ambiguity, the court must give the policy language its plain and ordinary meaning. GRE Ins. Group v. Metro. Boston Housing P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995) (citation omitted). "Ambiguities are resolved against the insurer, who drafted the policy, and in favor of the insured." Id. "The insured bears the initial burden of proving that a claim falls within the grant of coverage, which, once established, shifts the burden onto the insurer to show the applicability of any exclusion." Id. (citation omitted).

In order to determine whether the insurer has a duty to defend, the court compares the facts alleged in the complaint with the insurance policy provisions. Essex Ins. Co. v. Bloomsouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). "If the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate[8] a claim

---

[7] Both Sanders and the Defendants cite to Massachusetts law in their papers. Where the parties have agreed as to the choice of law, courts are "free to 'forego an independent analysis and accept the parties' agreement.'" Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp., 317 F.3d 16, 20 (1st Cir. 2003) (citation omitted).

[8] The First Circuit has defined the term "adumbrate" in the liability insurance context to mean "to give a sketchy representation of; outline broadly, omitting details . . . or to suggest, indicate or disclose partially and with a purposeful avoidance of precision." Essex Ins. Co., 562 F.3d at 403, n. 1.

covered by the policy terms, the insurer has a duty to defend." Id. (citation omitted). "The

obligation of an insurer to defend is not, and cannot be, determined by reference to the facts

proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint and

those facts which are known to the insurer." Id. (citations omitted). The duty to defend is

broader than the duty to indemnify. Id.

The Defendants argue that they had no duty to defend Doe because no lawsuit was ever

filed against him. Docket No. 12 at 6-9. Sanders responds that the plain language of the policy

established a duty to defend even if no lawsuit was filed because the applicable provision spoke

of both "claims" and "suits." Docket No. 21 at 8; Docket No. 32 at 1-4. The Court agrees with

the Defendants.

The relevant portions of the Policy state that if "a claim is made or a suit is brought,"

Travelers would "provide a defense at our expense by counsel of our choice, even if the suit is

groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is

appropriate." Policy, Section II, Coverage E – Personal Liability (emphasis added). This

provision sets forth two obligations of the insurer that may be triggered by a claim or suit. First,

the Defendants were required to provide counsel in the event of a suit only. The sentence

dealing with provision of a defense refers only to suits, not claims. Second, the Defendants

"may" investigate and settle a claim or suit. The Policy does not state that Defendants will

provide counsel if a claim is made, or that it must settle claims that are made. See, e.g., Vermont

Mut. Ins. Co., 2010 WL 1416124, at *4. Therefore, contrary to Sanders' arguments, the Policy

did not establish a duty to defend on the part of Defendants without the filing of a suit.[9]

---

[9] Sanders argues that reading the Policy to require defense coverage only in the event of a "suit,"
renders the term "claim" meaningless. Docket No. 32 at 2. The Court disagrees. The Policy
provides different obligations with respect to "claims" and "suits." Under the language of the

Here, there was no obligation to defend Doe because Sanders did not file a suit against Doe. While the Supreme Judicial Court ("SJC") has held that the duty to defend may be triggered before a suit is filed under certain circumstances, see Hazen Paper Co., 407 Mass. at 694-697, the Court finds that holding to be inapplicable to the facts of this case.

A duty to defend may be triggered by a pre-suit letter "where an insured's failure to respond adequately to a pre-suit letter would significantly affect the insured's ability to defend itself in a subsequent action arising out of the same subject matter and is 'substantially equivalent to the commencement of a lawsuit.'" Zecco, Inc. v. The Travelers, Inc., 938 F. Supp. 65, 67 (D. Mass. 1996). As the Zecco court explained:

> Although [the SJC has not] state[d] exactly what kinds of pre-suit letters will invoke a duty to defend, the decision does offer a number of indicators. First, a failure to comply with the letter should itself somehow alter the substantiality of the insured's liability, by making liability more likely or more devastating or by giving rise to some particular penalty. Second, the SJC noted that letters from governmental entities tend to have more severe consequences than those from private parties. Third, the SJC suggested that the letter's tone was relevant, insofar as it indicated whether the offer to discuss matters was a polite invitation or one the recipient could not refuse.

Zecco, 938 F. Supp. at 68.

Based on these factors, the Court finds that Sanders' October 2012 Demand Letter did not trigger a duty to defend. Sanders' demand letter did not bear any of the characteristics discussed above. Sanders argues that the first factor was present because a failure to timely respond to a Chapter 93A demand letter within thirty days would have exposed Doe to double or treble damages if the Court found that his refusal to grant relief was made in bad faith or with knowledge or reason to know that the act or practice complained of violated Chapter 93A.

---

policy, while the Defendants had the discretion, but not the obligation, to investigate and/or settle any claim against Doe, they had the obligation to defend any suits filed against Doe.

Docket No. 21 at 9. However, the District Court rejected a similar argument in <u>Zecco</u>. <u>Zecco</u>, 938 F. Supp. at 68.

Second, "the distinction between a letter from the government and one from a private party is significant." <u>Id.</u> Indeed, "it seems to be more than a coincidence that virtually every case discussing the issue involves an express threat from some federal or state agency." <u>Id.</u> (citations omitted). Therefore, this factor also supports a finding that no duty to defend arose from the October 2012 Demand Letter.

Finally, although the tone of the letter was certainly adversarial, the October 2012 Demand Letter was nothing more than a conventional Chapter 93A demand. In <u>Hazen Paper</u>, the SJC "was carving an exception out of a rule that limited a duty to defend a 'suit' to actual civil actions filed in a court." <u>Zecco</u>, 938 F. Supp. at 69. Thus, the Court does not believe that the SJC intended to extend the duty to defend to ordinary demand letters, such as the one at issue here. Accordingly, the Court finds that the allegations in the Complaint fail to establish that Defendants had a duty to defend Doe.

      C.      <u>Defendants Did Not Have A Duty To Indemnify Doe</u>

The duty to indemnify is narrower in scope than the duty to defend. <u>Transamerica Ins. Co. v. KMS Patriots</u>, 52 Mass. App. Ct. 189, 196 (2001). "Thus, '[i]f an insurer has no duty to defend based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify.'" <u>Id.</u> (quoting <u>Bagley v. Monticello Ins. Co.</u>, 430 Mass. 454, 459 (1999)); <u>see also</u> <u>Metro. Prop. and Casualty Ins. Co. v. Devlin</u>, __ F. Supp. 3d __, 2015 WL 1510693, at *2 (D. Mass. Apr. 2, 2015). Because the Court has found that Defendants had no

duty to defend, then Defendants as a matter of law also have no duty to indemnify.[10]

D.      Defendants Did Not Breach A Duty To Settle Sanders' Claims Against Doe

Pursuant to M.G.L. ch. 93A, § 2(a), "unfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce are unlawful." M.G.L. ch.

93A, § 2(a). Massachusetts General Laws ch. 176D, § 3, prohibits "unfair or deceptive acts or

practices in the business of insurance," including unfair claim settlement practices. M.G.L. ch.

176D, § 3(9). Chapter 93A incorporates Chapter 176D, and an insurer that has violated M.G.L.

ch. 176D, § 3(9)(f), by failing "to effectuate prompt, fair and equitable settlements of claims in

which liability has become reasonably clear," by definition, has violated the prohibition in

M.G.L. ch. 93A, § 2, against the commission of unfair or deceptive acts or practices. Hopkins v.

Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001).

Here, Sanders alleges that the Defendants violated Chapter 93A because they failed and

refused to effectuate a prompt, fair and equitable settlement of Sanders' claims although liability

was reasonably clear. Complaint ¶¶ 34, 35, 63-70. However, "[w]hen coverage has been

correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or

deceptive trade practices may be found." Transamerica Ins. Co., 52 Mass. App. Ct. at 197; see

also Massamont Ins. Agency, Inc. v. Utica Mutual Ins. Co., 489 F.3d 71, 75 (1st Cir. 2007).

---

[10] In addition, the Policy provides that Defendants had a duty to indemnify the insured only when
the insured is "legally liable" for damages, and no suit against Defendants may be brought "until
the obligation of the insured has been determined by final judgment or agreement signed by
[Phoenix]." Policy, Section II – Conditions, ¶ 6. Therefore, under the terms of the Policy, the
Defendants have no duty to indemnify Doe for the amount of the settlement because no
judgment was entered against Doe and because the Defendants did not approve the settlement.
While an insurer who unjustifiably refuses or fails to defend its insured may be liable for the cost
of a reasonable settlement of the underlying claim, see Jefferson Ins. Co. of New York v. Nat'l
Union Fire Ins. Co. of Pittsburgh, 42 Mass. App. Ct. 94, 104 (1997), here the Court has found
that the Defendants had no duty to defend under the Policy as a matter of law.

Because the Court has ruled that the Defendants had no duty to defend or indemnify Doe, there was no duty to settle any claims against him.

In addition, Sanders has failed to plead facts that would establish that Doe's liability to Sanders was reasonably clear. In order to determine whether a defendant's liability is "reasonably clear," one must employ an objective test which "calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." Hochen v. Bobst Group, Inc., 198 F.R.D. 11, 17 (D. Mass. 2000) (citing Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-57 (1995)); Bobick v. United States Fidelity & Guaranty Ins. Co., 57 Mass. App. Ct. 1, 7 n. 6 (2003). If a reasonable person would conclude that the chances were approximately equal that the defendant would be found not liable, liability is not reasonably clear. Hochen, 198 F.R.D. at 17.

In arguing that Doe was liable for negligence, Sanders describes his claims as follows:

> This is not a case about lying in the dating process as alleged by Travelers. Rather, it is a case where one person has injected himself into a position of trust and aid for a known vulnerable person which created a duty of care and caused the vulnerable person to abandon other avenues of support. That duty was breached when Doe withdrew his aid with reckless disregard for the foreseeable consequences.

Docket No. 21 at 17-18 (citations omitted). However, a consensual sexual relationship generally does not give rise to any duty actionable in tort. Decesaris v. Hallmark Health Emergency Physicians, Inc., 86 Mass. App. Ct. 1105 (2014) (unpublished disposition) (citing Korper v. Weinstein, 57 Mass. App. Ct. 433, 435, 437, 439 (2003)); see also Conley v. Romeri, 60 Mass. App. Ct. 799, 801 (2004) (noting that the plaintiff had not identified any legally cognizable duty between parties in a dating relationship nor was the court aware of any legally defined duty

applicable under those circumstances). Sanders has not cited, and the Court has not found, any

Massachusetts cases supporting a cause of action under Sanders' theory.[11]

In light of the foregoing Massachusetts law, the only potential source of a duty is Doe's

status as Andersen's lawyer. While Doe's alleged conduct would likely constitute a breach of

his ethical obligations, see generally Docket No. 21 at 16-17, a violation of legal ethics, without

more, does not establish liability for damages. Cf. Korper, 57 Mass. App. Ct. at 436-437. "The

attorney-client relationship is 'highly fiduciary' in Massachusetts." Sears, Roebuck & Co. v.

Goldstone & Sudalter, P.C., 128 F.3d 10, 15 (1st Cir. 1997) (citations omitted). "However, the

existence of a fiduciary relationship does not mean that all interaction between the parties to that

relationship is measured by the standards applicable to fiduciaries; the fiduciary is held to a

higher standard of conduct only as to matters within the scope of the fiduciary relationship."

Korper, 57 Mass. App. Ct. at 437-438. As alleged in the Complaint, any trust and confidence

that Andersen put in Doe went beyond that related to any professional services he rendered.[12]

---

[11] The two Massachusetts cases Sanders cited are inapposite, as they involve allegations specific
to the psychiatrist-patient relationship and do not involve sexual relationships. See Carney v.
Tranfaglia, 57 Mass. App. Ct. 664, 665 (2003) (estate of deceased patient brought medical
malpractice action against psychiatrist after patient died of overdose of chloral hydrate
prescribed by psychiatrist); McNamara v. Honeyman, 406 Mass. 43, 45 (1989) (representatives
of mental patient who hanged herself in state mental hospital sued hospital and supervising
psychiatrist). The rest of the cases cited by Sanders are from other states and are similarly
inapposite.

[12] Indeed, Sanders does correctly argue that the professional services exclusion in the Policy does
not apply to his claims. Docket No. 21 at 15-16. Massachusetts courts have interpreted
"professional services" exclusions to apply only to claims involving the exercise or failure to
exercise professional judgment. See GRE Ins. Group, 61 F.3d at 84. "[E]ven tasks performed
by a professional are not covered [] if they are 'ordinary' activities 'achievable by those lacking
the relevant professional training and expertise.'" Saint Consulting Group, Inc. v. Endurance
Am. Specialty Ins. Co., Inc., 699 F.3d 544, 554-555 (1st Cir. 2012) (citations omitted).
Accordingly, the Court finds that the professional services exclusion does not apply to Sanders'
claims and declines to recommend dismissal on that basis.

Massachusetts law does not appear to recognize an actionable claim under such circumstances. Id. at 438; see also Schwarz v. Frost, No. 2513, 1998 WL 1112607 (Pa. Com. Pl. Mar. 16, 1998) (applying Pennsylvania law to attorney-client sexual relationship).

In any event, the Court need not conclusively determine that Sanders' theory of liability against Doe would in fact succeed. Here, it is sufficient that, in light of the legal precedent, a reasonable person could not conclude that Doe was liable to Sanders. In other words, because Sanders raised novel claims against Doe not supported by any Massachusetts case, liability was not reasonably clear and it was not unreasonable for the Defendants to decline to settle Sanders' claims. Accordingly, the Court finds that Sanders' cannot maintain a cause of action against the Defendants for violations of Chapter 176D and Chapter 93A.

E.      The Complaint Should Be Dismissed In Its Entirety

All of Sanders' claims are based on his allegations that the Defendants wrongly failed to defend and indemnify Doe, and failed to effectuate a prompt, fair, and equitable settlement of Sanders' claims against Doe. The underlying facts of this case are tragic. However, as this Court has found that each of Sanders' assertions fail as a matter of law, all of Sanders' claims should be dismissed.

F.      Sanders' Request For Leave To Amend Should Be Denied

Sanders requests that "should the Court find that [he] has failed to properly plead his claims, then he respectfully requests an opportunity to cure by amending his Complaint." Docket No. 21 at 23 (emphasis in original). This vague request should be denied. If Sanders thought that an amendment could cure the deficiencies pointed out by the Defendants, then the proper course of action would have been to amend the Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, within twenty-one days after the filing of Defendants'

motion. See generally Levitt v. Sonardyne, Inc., No. 2:12-cv-00032-JAW, 2012 WL 5350037, at

*3 (D. Me. Oct. 29, 2012). Moreover, Sanders has failed to state how any such amendment

would cure the Complaint's deficiencies. Given that the Defendants' motion raise mostly issues

of law, it is unlikely that amendment could save Sanders' claims.

IV.     RECOMMENDATION

        For the foregoing reasons, this Court recommends that the District Judge assigned to this

case grant the Defendants' motion and dismiss Sanders' complaint.

V.      REVIEW BY DISTRICT JUDGE

        The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

and Recommendation. The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such

objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

F.2d 343 (1st Cir.1993).

                                                /s/ Jennifer C. Boal
                                                JENNIFER C. BOAL
                                                United States Magistrate Judge